UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Debra Greenberg,

                    Plaintiff,              CV-03-1396 (CPS)

        - against -                         MEMORANDUM
                                            OPINION AND ORDER

Unum Life Insurance Company of America,

                    Defendant.

----------------------------------------X

SIFTON, Senior Judge.

        Plaintiff Debra Greenberg seeks to recover long term

disability benefits under a group disability insurance policy

(the "policy") provided by her former employer, Wolters Kluwer,

and administered by defendant, Unum Life Insurance Company of

America ("Unum"). Plaintiff claims that she was not given a "full

and fair" review of her appeal from Unum's denial her benefits

pursuant to 29 U.S.C. § 1133,[1] a provision of the Employee

_____

        [1] Plaintiff purports to bring her case under 29 C.F.R. §2560.503, the
CFR section defining a "full and fair" review. However, this section is
inapplicable to the present case as it applies only to claims filed on or
after January 1, 2002, while Greenberg's claim was filed before January 1,
2002. Plaintiff's claim is appropriately brought under 29 U.S.C. § 1133 which
provides that:

        In accordance with regulations of the Secretary, every employee
        benefit plan shall--

        (1) provide adequate notice in writing to any participant or
        beneficiary whose claim for benefits under the plan has been
        denied, setting forth the specific reasons for such denial,
        written in a manner calculated to be understood by the
        participant, and
        (2) afford a reasonable opportunity to any participant whose claim
        for benefits has been denied for a full and fair review by the
        appropriate named fiduciary of the decision denying the claim.

Retirement Income Security Act of 1974 ("ERISA"). Presently before this Court are cross motions for judgment on the administrative record. For the reasons set forth below Unum's motion is granted and Greenberg's motion is denied.

## BACKGROUND

The following facts are taken from the administrative record. Disputes are noted.

The plaintiff, Debra Greenberg, was employed as a collection specialist by Walters Kluwer (AR 2).[2] In connection with her employment at Walters Kluwer, Greenberg was covered under Unum's group long term disability insurance policy. Under the terms of the policy, an employee is disabled when, she is "limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury" and "has a 20% or more loss in [her] monthly earnings due to the same injury or sickness." (AR 448). According to the policy's glossary the

---

29 C.F.R. §2560.503 defines a "full and fair review" mandating, among other things, that it:

> h(2)(ii) - Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual;

> h(2)(v) Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual;

[2] Citations refer to Bates stamped pages of the administrative record. The pages of the record are numbered in reverse order.

relevant terms are defined as follows:

> LIMITED means what you cannot or are unable to do.

> MATERIAL AND SUBSTANTIAL DUTIES mean duties that:

>> - are normally required for the performance of your regular occupation and
>> - cannot be reasonably omitted or modified.

> REGULAR OCCUPATION means the occupation you are routinely performing when your disability begins. UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

(AR 429-428).

The policy further states that "when making a determination under the policy UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (AR 452).

Greenberg is a collections specialist. (See e.g. AR 2). In connection with Greenberg's claim, Wolters Kluwer, her employer, competed a Long Term Disability Claim Job Analysis. In the analysis Wolters Kluwer identified Greenberg as a collection specialist and stated that her job involved "frequent" sitting and "occasional" "standing," "walking," "stooping," and "balancing." (AR 77). It also required occasional "picking up file paper" weighing "1-2 lbs." (Id.) The primary tasks requiring a collections specialist to use her hands are "typing," "telephone," and "filing." (AR 76). Wolter Kluwer further states that it is possible to offer the employee assistance so that,

"all of the work can be accomplished by sitting." (Id.) Wolter

Klowers also submitted a Position Description for collection

specialist. The Position Description identifies the category of

"physical demands" as "not applicable" to the occupation of

collection specialist.[3] Accordingly, Unum determined that the

Walter Klowers position of "collection specialist" was most

closely analogous to the *Dictionary of Occupational Titles*

category of "collection clerk."[4] According to the *Dictionary of*

*Occupational Titles*, this is a sedentary position. A sedentary

position includes,

> exerting up to 10 pounds of force occasionally and/or a
> negligible amount of force frequently to lift, carry,
> push, pull or otherwise move objects, including the

---

[3] Greenberg states that her occupational duties include:

(I) continual bending and kneeling and stretching involved in
locating and retrieving heavy billing packages from storage; (ii)
the lifting and carrying of these heavy billing packages from
storage to the work area; (iii) required sitting for more than 20
minutes at a time to obtain necessary information from billing
documentation and the making of required telephone calls to
debtors to recover amounts due, in providing customer service, and
assisting in write off process; (iv) required sitting for more
than 20 minutes at a time coordinating payment records with
collection documentation and closing of paid accounts; (v) the
lifting and carrying of heavy billing packages from the work area
to storage; (vi) the bending, kneeling and stretching required to
return the billing packages to storage. (AR 409)

Greenberg further states that, "[e]ach billing package can be more than a foot
high and weight more than 20 pounds." (AR 416).

Accordingly, Greenberg argues that job is more closely analogous to the
Dictionary of Occupational Titles' "Trademark Research Collector/File Clerk"
(AR 417) which requires "light work.(AR 416).

[4] As noted the policy looks to occupation as it is normally performed in
the national economy and not as the occupation is performed for a particular
employer. Thus, an insured's specific job is analogized to the closest
matching general occupation and the disability is determined based on the
requirements of the general occupation.

human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

(AR 304).

*Injury and Treatment*

In September 2000, Greenberg suffered severe back pain when a disc in her back "moved" while she was lifting heavy collection books at work. (AR 73). She became disabled because of the resulting sprained back and pinched nerve together with a viral infection. (AR 62). Accordingly, Greenberg sought treatment from Dr. Alexander Nelson, her primary care physician, Dr. William Boxer, her primary internist, and Dr. Igor Khelemksy, a neurologist. (AR 1).

Medical records from this period state that Greenberg was unable to work. Greenberg's physical therapist, Kathleen Haddican, stated that Greenberg attended physical therapy twice a week to treat lumbosacral strain[5] and sacroiliitis.[6] (AR 7). As a result of the injury to her lower back, Greenberg experienced a mild decrease in sensation in her legs and some limitation of

---

[5] Lumbosacral is defined as, "relating to the lumbar vertebrae and the sacrum." Stedman's Medical Dictionary (27th ed.1999) at 1034. The lumbar vertebrae are "the vertebrae, usually five in number, located in the lumbar region of the back." Id. at 1957. The sacrum is, "the segment of the vertebral column forming part of the pelvis." Id. at 1588.

[6] Sacroiliitis is "inflammation of the sacroiliac joint." Stedman's Medical Dictionary (27th ed.1999) at 1587. Sacroiliac means, "relating to the sacrum and the illium." Id. at 1587. See footnote 5 for the definition of sacrum. Illium is "the broad, flaring portion of the hipbone." Id. at 875.

movement in her legs. (AR 18). An EMG/NCV[7] report from November 7, 2000 found "mild lumbar radiculopathy[8] primarily involving roots L5[9] on the right and S1 on the left." (AR 16). An MRI from November 18, 2000 indicated a "bulging disc" in the lumbar spine. (AR 21). An EMG/NCV report from February 13, 2001 found that "electrodiagnostic study is consistent with bilateral moderate to severe radiculopathy involving cervical roots C8." (AR 11). Greenberg's physicians told her that she should not bend, lift more than a few pounds, or sit or stand for prolonged periods of time. (AR 26, 24, 22).

Greenberg also submitted a claim to Unum. Unum reviewed Greenberg's medical records. On April 26, 2001 an unidentified clinical consultant reviewed Greenberg's medical records and was asked by Unum to determine whether or not Greenberg's attending physician's restrictions and limitations of "no bending, lifting or prolonged sitting [sic] standing" were supported. The clinical

---

[7] EMG is an abbreviation for, "electromyogram" Stedman's Medical Dictionary (27th ed.1999) at 582. An electromyogram is, "a graphic representation of the electric currents associated with muscular action." Id. at 576. NCV is short for Nerve Conduction Velocity Test, which is, "an electrical test used to detect nerve conditions." Medicinet, a network of U.S. board certified physicians and allied health professionals. available at: http://www.medterms.com/script/main/art.asp?articlekey=34030

[8] Lumbar means, "relating to . . . the part of the back and sides between the ribs and the pelvis." Stedman's Medical Dictionary (27th ed.1999) at 1034. Radiculopothy is a "disorder of the spinal nerve roots." Id. at 1503.

[9] Vertebrae are "the segments of the spinal column." "In people, there are usually 33 vertebrae: 7 cervical, 12 thoracic, 5 lumbar, 5 sacral (fused into one bone, the sacrum) and 4 coccygeal (fused into one bone, the coccyx).Stedman's Medical Dictionary (27th ed.1999) at 1957. The lumbar vertebrae are "the vertebrae . . .located in the lumbar region of the back" and are labeled, "L1-L5." Id.

consultant's report stated that, "based on the of 2/13/01, the
R&Ls [restrictions and limitations] as stated above are
supported. Continue to obtain notes from Dr. K [Khelemsky] to
monitor progress." (AR 157).

On May 3, 2001, after the completion of a 180 day
elimination period, Unum sent Greenberg a letter approving her
claim. (AR 148-150). Although approving the claim, the letter
also stated that "you must continue to meet the definition of
disability in your contract" and that "Unum may request that you
provide additional medical and/or vocational information on a
periodic basis to support your claim for disability." (AR 150).

On September 27, 2001, Unum asked Patti Bryan, a registered
nurse on its staff, to review and evaluate Greenberg's then
current medical records. Nurse Bryan observed that the
restrictions and limitations suggested by Greenberg's doctors
"are supported but appear to be within the ranges for her job
description."[10] (AR 266).

In October 2001, Dr. Khelmesky responded to a request from
Unum that he clarify Greenberg's limitations and restrictions. He
instructed that Greenberg not sit for more than ten minutes and
not lift anything over 10 pounds. He further stated that
Greenberg could "occasionally" reach above her shoulder or climb

_____

[10] Indicating that although Greenberg's doctors restrictions and
limitations were appropriate, Greenberg should have been able to do her job
even within these limitations.

stairs.

In November 2001, Unum asked its physician, Robert C. Coddington M.D., a board certified orthopedic surgeon, to review the claim. Dr. Coddington completed his review on December 7, 2005. Dr. Coddington stated that, "the objective EMG/NCV findings and MRI findings are the main support for the alleged impairments" but that "the MRI bulging disc changes from the report do not seem severe enough to cause impingement on the nerve roots." (AR 295). Dr. Coddington recommended that Unum ask Dr. Burton McDaniel, a physiatrist, board certified in physical medicine and rehabilitation, whether the EMG/NCV changes were as significant as Greenberg's doctor had indicated and whether or not the raw data supported Greenberg's doctor's findings. Dr. Coddington noted that Greenberg's "positive clinical findings are mostly subjective, in that they are under her control." (Id.). Dr. Coddington believed that Greenberg's inability to work for 14 months due to a lifting strain was excessive and that the restriction and limitations seemed extreme relative to Greenberg's complaints. (Id.) Dr. Coddington recommended "independent clinical evaluation and spontaneous observation" to help clarify her activities and abilities.

Following Dr. Coddington's recommendations, Unum asked Dr. McDaniel to review Greenberg's claim. Dr. McDaniel found that the "EMG/NCV findings are not supported by documented physical

findings in claimants file."

On December 31, 2001, Rhonda Wheeler, a Customer Care Specialist at Unum, called Greenberg to inform her that her claim had been denied. (AR 300-302). The termination was confirmed by letter the same day (AR 304). The letter explained that the claim and the accompanying MRI and EMG's were reviewed by both an Orthopedic Surgeon and a Physiatrist and that there was not sufficient evidence in the record to support plaintiff being unable to work for 14 months due to a lifting strain. The letter also instructed Greenberg that under ERISA she was entitled to appeal the decision and that such written request should include "any documentation you wish [Unum] to consider]. (Id.)

On January 12, 2002, Attorney Gary F. Glenn submitted an appeal on behalf of Greenberg. Accompanying the appeal was the report of a December 17, 2001 cervical MRI (AR 332) and a functional capacity evaluation previously provided by Dr. Khelemsky to the Social Security Administration. (AR 319). The MRI indicated that Greenberg had a right posterior lateral disc

herniation[11] at C6-7,[12] which deforms the ventral aspect of the thecal sac"[13] and a bulging of C5-6. The functional capacity evaluation indicated that Greenberg experienced spasms, that she had diminished reflexes in her Achilles,[14] that she did not have diminished sensation or muscle weakness, that she had some limitations on her range of motion, and that in the course of an 8-hour period she could only sit for a half hour, stand for a half hour, walk for a half hour and lay down for 6 and a half hours. (AR 319).

Dr. Coddington reviewed the recently submitted documentation. However, the new information did not change his earlier recommendation.  He stated that "the described findings

---

[11] Disc herniation is "protrusion of a degenerated or fragmented intervertebral [disc] into the intervertebral foramen with potential compression of a nerve root or into the spinal canal with potential compression of the cauda equina in the lumbar region or the spinal cord at higher levels." Stedman's Medical Dictionary (27th ed.1999) at 523.  An intervertebral disc is "a [disc] interposed between the bodies of adjacent vertebrae."  Id.  Foramen are "aperture[s] or perforation[s] through a bone or a membranous structure." Id. at 698.  Cauda equina "comprises the roots of all the spinal nerves below the first lumbar."  Id. at 303.

[12]  As indicated in footnote 9, physicians refer to regions of the spine first by name (cervical, thoracic, etc.) and then by vertebrae number. As discs are located between vertebrae they are referred to by the numbers of the two vertebrae between which they are located. Thus, a disc at C6-7 would be located in the cervical region of the spine between vertebrae 6 and vertebrae 7. See Stedman's Dictionary (27th ed. 1999) at 524.

[13] Cerebrospinal fluid, spinal cord and spinal roots compartmentalized by a surrounding membrane of dural matter. Neurosurgery infonet, found at http://uscneurosurgery.com/infonet/glossary/t/thecal%20sac.htm; ducal matter is, "a tough, fibrous membrane forming the outer covering of the central nervous system" Stedman's Medical Dictionary (27th ed.1999) at 548.

[14] The Achilles tendon is the tendon in the heel. A tendon is, "a nondistensible fibrous cord or band or variable length that is the part of the muscle that connects the fleshy part of the muscle with its bony attachment or other structure." Stedman's Medical Dictionary (27th ed. 1999) at 1794.

by Dr. Igor Khelemaky [sic] do not correlate with the diagnosis he gives and with the MRI findings" and that "the client's subjective complaints seem the most important factor in his decision regarding R&Ls." (AR 339). Ultimately, Coddington "still [felt] that we need an independent clinical evaluation to clarify her activities and abilities and possibly also spontaneous observation of her activities."

By letter dated March 15, 2002, and signed by Rhonda Wheeler, Unum denied the appeal. (AR 345). The letter indicated that the file would be forwarded to the Quality Performance Support Unit which would provide a final determination of the claim. (Id.) Upon review of Greenberg's claim, Shaundra O'Neal of the Quality Performance Unit noted that the independent clinical evaluation recommended by Dr. Coddington was never conducted. (AR 350). Accordingly, she vacated the decision to deny the claim and returned the claim to the Customer Care Unit. (Id.) By letter dated April 10, 2002, O'Neal directed Rhonda Wheeler at the Customer Care Unit to "reinstate benefits and obtain the independent evaluation per Coddington's recommendations" (AR 350). The letter also instructed that "should additional activity result in an adverse determination, advise insured with right to appeal." (Id) A letter explaining this decision was sent to Greenberg's attorney on April 10, 2002. (AR 349).

Thereafter, Unum reinstated benefits (see AR 360, 362).

Pursuant to the instructions from the Quality Performance Unit, the Customer Care Unit arranged for an independent neurologist, Dr. Michael Rubin, to conduct an independent evaluation of Greenberg. The instructions to Dr. Rubin contained the following statements and instructions.

> Debra Greenberg is a 49 year old collections specialist who presented a claim for disability on 9/18/00 due to cervical and lumbar radiculopathy and chronic pain. She has received conservative treatment thus far for her condition.

> This claim has been formally appealed and additional medical information has been received. However, the information received has not changed the company's decision to terminate benefits. Her claim has been reopened and benefits will be paid until an IME [independent medical examination] can be conducted to help clarify our insured's capabilities.

> In order to clarify the extent of Ms. Greenberg's impairment and how it prevents her from returning to her occupation, we believe a comprehensive evaluation is necessary. We are interested in your opinion regarding diagnosis, treatment options, and restrictions and limitations. We have enclosed medical data to assist you with your evaluation.

(AR 354-356).

Dr. Rubin examined Greenberg on June 3, 2002.[15] He found a small disc herniation. However, he did not believe Greenberg to be disabled and felt that she was exaggerating her limitations. Accordingly, he wrote:

---

[15] According to a subsequent affidavit by Greenberg, this examination lasted less than 5 minutes. Greenberg further states that during the examination, Dr. Rubin hit her knee with a hammer, and asked her to walk a few steps back and forth, but never tested her body for sensation. (AR 401).

The findings on examination appear exaggerated, in the form of giveaway weakness[16], and non physiological, given the hemibody[17] decreased sensation below the neck. The MRI findings are not significantly abnormal and could be seen in perfectly normal persons of her age. The EMG abnormalities in the arms do not correlate with the MRI findings as reported, even allowing that the cervical spine MRI abnormality is pathological and not within normal limits.

In my opinion there is no convincing evidence for total disability. Her complaints and apparent abnormalities on exam are entirely subjective and far in excess of anything that is seen on imaging studies.

After review of all the above I feel that she is capable of performing her job description as a collections person. Her job is at the desk on the phone. I have no restrictions or limitations for her performance of her occupation. I do not feel additional diagnostic tests are necessary. However, a repeat of the EMG studies may indicate that the abnormalities previously seen are in fact now resolved. I do not feel that further treatment, therapy or surgery is indicated.

(AR 372).

On July 8, 2002, Unum asked its physician, Dr. Richard Tyler, to review Greenberg's claim and Dr. Rubin's report. Dr. Tyler observed that, "[a] complete assessment of this file was done. The IME findings correctly reflect the diagnostic studies contained in this file. The findings are reasonable. The

---

[16] Apparently a standard test doctors ask a patient to resist pressure put on a limb by the physician. The physician can tell the difference between a patient whose weak limb is incapable of resisting the pressure and a patient who allows their limb to "give way" even though the patient could have resisted the pressure.

[17] Hemi means, "one-half" Stedman's Medical Dictionary (27th ed.1999) at 798. Accordingly, hemi-body indicates something affecting only one-half of the body.

conclusions of the IME are supported." (AR 376).

On July 11, 2002, Rhonda Wheeler of Unum's Customer Care Center notified Greenberg's attorney that the claim was again denied, but that if Greenberg disagreed with the finding she had a right to appeal the adverse decision. (AR 380-378). On July 24, 2002, Greenberg's new lawyer, Franklin M. Meyer requested copies of Dr. Rubin's and Dr. Tyler's reports. (AR 381). Unum faxed the reports to Meyer that same day. (AR 387). On September 18, 2002, Shaundra O'Neal at the Quality Performance Support Unit notified Meyer that Unit had again rereviewed the file and upheld the claim determination, because the severity of Greenberg's complaints were out of proportion to the clinical findings. (AR 393-393). Thereafter, Meyer requested additional time in which to submit Greenberg's appeal (AR. 395). Unum agreed to the extension of time. On November 22, 2002 Meyer submitted Greenberg's formal appeal. (AR 420-401).

In connection with her appeal, Greenberg submitted a November 1, 2002 report by Dr. Michael Suh, summarizing the findings of an October 30, 2002 MRI. (AR 405). Greenberg also submitted a "Neurologic Summary" composed by Dr. Khelemsky which, among other things, summarized the findings[18] of the October 30, 2002 MRI as follows:

---

[18] The MRI's themselves were not submitted.

The 10/30/02 lumbar spine MRI demonstrated broad
posterior disc bulge at L4-L5 and L5-S1 with 3 mm
posterior protrusion into the spinal canal. There was
also posterior annular tear[19] and narrowing of the left
neural foramen.[20]
(AR 403).

Shaundra O'Neal reviewed the MRI report and the "neurologic

summary" from Dr. Khelemsky. However, no doctor reviewed these

reports. On December 12, 2002, Shaundra O'Neal advised Greenberg

that Unum would not reverse its prior determination that she was

not disabled. (AR 423). In a three-page letter Unum explained its

reasoning in denying the appeal. This reasoning focused primarily

on the fact that the pain complaints were disproportionate to the

medical findings and on Unum's reliance on Wolter Klowers

representations that Greenberg's occupation was sedentary despite

Greenberg's claim that it involved "light work." (AR 423-421).

In reaching its decision Unum did not have before it the

actual October 30, 2002 MRI scan because Greenberg had not

submitted the actual scan. On December 7, 2004, while this action

was pending, Unum agreed to accept and review the MRI scan and

specifically address whether it would impact Unum's decision.

(January 4, 2005 Stipulation and Order). Greenberg submitted the

_____

[19] Anular literally means, "ring shaped." Stedman's Medical Dictionary
(27th ed.1999)at 107. Here, it indicates "tiny cracks on the outer wall of a
disc." SpinalMedicine.com, found at:
http://www.spinalmedicine.com/ask/q991228d.html

[20] A foramen is, "an aperture or perforation through a bone or
membranous structure." Stedman's Medical Dictionary (27th ed.1999) at 698.
"Neural" means "relating to any structure composed of nerve cells or their
processes." Id. at 1206. Thus, the neural foramen is the place where the
nerves exit the spinal cord.

scan and it was reviewed by Dr. Tyler. He found "mild
degenerative disc disease at the levels of L4-5 and L5-S1 with
slight posterior bulging at both levels" as well as a "small
annular tear in the disc at L4-5." (AR 481-480]. However, he
found no "disc herniation [or] stenosis."[21] Accordingly, his
earlier opinion that Greenberg was not disabled, "remained
unchanged." (Id.) Consequently, on March 30, 2005, Appeals
Consultant Tanya Anderson sent a letter to Greenberg's attorney,
informing him that Unum would not change its prior determination
that Greenberg was not entitled to further benefits under the
policy.

**DISCUSSION**

<u>Standard of Review</u>

Under ERISA a district court reviews a plan administrator's
decision to deny benefits under "a *de novo* standard unless the
benefit plan gives the administrator . . . discretionary
authority to determine eligibility for benefits or to construe
the terms of the plan." *Muller v. First Unum Life Ins. Co.*, 341
F.3d 119, 124 (2d Cir. 2003); *Firestone Tire & Rubber,* 489 U.S.
101, 102 (1989). "If the benefit plan vests the plan
administrator with discretionary authority, the denial of
benefits is subject to a deferential 'arbitrary and capricious'

---

[21] Spinal stenosis is a narrowing of spaces in the spine that results in
pressure on the spinal cord and/or nerve roots.

standard of review." *Snyder v. First Unum Life Ins. Company*, 2004 WL 1784334, *2 (W.D.N.Y. 2004); *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 109 (2d Cir. 2003); *Pagan v. Nynex Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995).

In this case, it is undisputed that the policy gives Unum the discretion to determine eligibility for benefits and the authority to interpret the terms and provisions of the policy. The policy clearly states that, "when making a determination under the policy UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (AR 452). This language is more than sufficient to vest discretionary authority in Unum. *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir. 1999)("magic words such as 'discretion' and 'deference' may not be absolutely necessary to avoid a de novo standard of review . . . [but] use of such words is certainly helpful in deciding the issue") (internal quotes and brackets omitted).

However, Greenberg argues that *de novo* review should apply because Unum operated under a conflict of interest because of its dual status as policy administrator and the policy insurer. Where a plan administrator vested with full discretion under the terms of a plan is influenced by such a conflict of interest, "the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo." *Sullivan v. LTV*

*Aerospace & Def. Co.*, 82 F.3d 1251, 1256 (2d Cir. 1996). However, to gain the benefit of de novo review the plaintiff must show that the administrator was *in fact* influenced by the conflict of interest. *Pulvers v. First Unum Life Ins. Co.,* 210 F.3d 89, 92 (2d Cir. 2000). Although the fact that Unum served as both plan administrator and plan insurer is a factor to be weighed "in determining whether there has been an abuse of discretion," *Id*. (citing *Sullivan,* 82 F.3d at 1255-1256, it "is alone insufficient as a matter of law to trigger stricter review." *Id.*

In support of her contention that Unum was actually biased, Greenberg points out that Rhonda Wheeler twice ignored Dr. Coddington's recommendation that an independent medical examination be conducted and instead denied the claim. However, Wheeler's oversight or disregard of Coddington's recommendations was remedied during Unum's internal appellate review of the claim dismissal. Because "the file was resolved despite recommendations" Shaundra O'Neal directed that benefits be reinstated and the independent evaluation be obtained. (AR 350). Unum's willingness to reconsider its own prior decision and its decision to reinstate benefits pending the independent evaluation is sufficient to negate an inference that it was actually biased against Greenberg's claim.

However, Greenberg claims that O'Neal was also biased because she stated "*prior to pre-closure activity*, please

reinstate benefits and obtain the independent evaluation per Coddington's recommendations." (AR 350). Greenberg suggests that O'Neal's reference to "pre-closure activity" suggests that denial of the claim was a foregone conclusion to O'Neal. However, it is not clear what "pre-closure" activity means. It might mean dismissal of the claim, but it just as easily might mean closing the case by determining that Greenberg was entitled to benefits. Furthermore, O'Neal also stated, "*should* the additional activity result in an adverse determination, advise insured with right to appeal." (Id.) This statement clearly suggests that O'Neal did not see the outcome of the claim as a foregone conclusion. Finally, Greenberg suggests that the fact that Unum did not review the actual MRI scan until after the commencement of this case is indicative of Unum's conflict of interest. However, it is undisputed that Greenberg did not provide the actual MRI scan to Unum during the administrative review. Thus, the fact that Unum did not review it at that time does not demonstrate bias. Indeed, the fact that Unum agreed to review the scan at such a late date tends to indicate that Unum had an open mind concerning Greenberg's claim and was not biased against her. The fact that Unum ultimately found that the scan did not alter its opinion is also of no surprise since Unum had Dr. Suh's report of the scan during the administrative review. Since Dr. Tyler's review on behalf of Unum found the scan to be consistent with Dr. Suh's

report of the scan, introduction of the scan gave Unum no
additional information beyond what it had at the administrative
review. Accordingly, Unum had no reason to alter its decision.
Greenberg has therefore not demonstrated actual bias, and
accordingly the "arbitrary and capricious standard" will be
applied.

The Arbitrary and Capricious Standard

The "arbitrary and capricious" standard of review is narrow,
and constitutes the "least demanding form of judicial review of
administrative action." *Seff v. NOITU Trust Fund*, 781 F. Supp.
1037, 1040 (S.D.N.Y. 1992). The court looks to "whether the
decision was based on a consideration of the relevant factors"and
to whether or not the agency put forth a "rational connection
between the facts found and the choice made." *Healix Healthcare,
Inc., v. Metrahealth Ins. Co.,* 1999 WL 61832, *1 (S.D.N.Y. 1999)
(quoting *Bowman Transp. v. Arkansas-Best Freight Sys.*, 419 U.S.
281, 285-286 (1974)).

Decisions of the plan administrator are accorded great
deference: "[t]he court may not upset a reasonable interpretation
by the administrator." *Jordon v. Ret. Comm. of Rensselaer
Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995). This
deference "applies to both plan interpretation and factual
determinations." *Dorato v. Blue Cross of W.N.Y., Inc.* 163 F.Supp.
2d 203, 209 (W.D.N.Y. 2001) (citing *Kinstler,* 181 F.3d at 251).

Accordingly, it is "inappropriate in this setting for the trial judge to substitute his judgment for that of the plan administrator." *Dorato,* 163 F.Supp.2d at 209 (quoting *Bella v. Metro. Life Ins. Co.,* 1999 WL 782132, *5 (W.D.N.Y 1999); *Pagan,* 52 F.3d at 442.

As a result, the decision to deny benefits, "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler,* 181 F.3d at 249; *Dorato,* 163 F.Supp.2d at 209. "Substantial evidence in turn is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995)(quoting *Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377, 381 (10th Cir. 1992)). Finally, in reviewing the administrator's decision, "district courts may consider only the evidence that the fiduciaries themselves considered." *Id.* at 1071.

Greenberg's Occupation

Greenberg contends that her regular occupation at the time of her disability was a trademark collector/file clerk and that this occupation involved the continual bending, kneeling and stretching required to retrieve and carry billing packages weighing more than 20 pounds. In contrast, Unum contends that

Greenberg's regular occupation was that of a collection clerk.
Collection clerk is a sedentary position almost exclusively
conducted while seated and which at most involves carrying 1-2
lb. packages.

The administrative record indicates that on Greenberg's
initial claim form she indicated that she was a collection
specialist. Greenberg submitted no job description to Unum.
Rather Wolter Klower completed a "Long Term Disability Claim
Analysis" which it submitted to Unum along with a copy of
Greenberg's "position summary." Both indicated that Greenberg's
job required very little movement, could be performed sitting
down and was essentially sedentary. Greenberg did not dispute
Wolter Klower's characterization of her job until her November
2002 appeal, at which point she argued that her job involved
substantial movement, including carrying packages weighing more
than 20 pounds.

The administrator could reasonably have decided to credit
Wolter Klowers definition of Greenberg's job over her own. The
administrator might also have reasonably been suspicious that
Greenberg failed to object to her job description until such a
late date, and therefore decided to credit the earlier
description of her job. The administrator's decision was thus
reasonable and as such, its factual determination must be

accorded deference.[22]

## Did Greenberg get a "full and fair" review?

29 U.S.C. 1133(2) provides that every employee benefit plan must, "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Greenberg argues that a full and fair review should be defined by the relevant provisions of 29 C.F.R. §2560.503, requiring (1) that the appeal be adjudicated by a named fiduciary who did not make the initial adverse benefit determination, nor the subordinate of that individual; (2) the appeal review may not afford deference to the initial adverse benefits determination; and (3) if an appeal concerns medical issues then on appeal the plan must retain a different health care professional who was not consulted in connection with the adverse benefit determination nor is the subordinate of any such individual.[23] While Greenberg

---

[22] Accordingly, the administrator was also reasonable in discounting the opinion of Dr. Khelemsky that Greenberg was incapable of performing a job that would require her to lift 20 lb packages (AR 422-421).

[23] Although the requirements of 29 C.F.R. §2560.503 do not apply in this case, it is worth noting that Unum appears to meet these requirements as well. The initial adverse benefit determination was made by Wheeler in the Customer Care Unit, while the appeal was adjudicated by O'Neal in the Quality Performance Support Unit. The thoroughness of O'Neal's discussion of the denial indicates that she did not give deference to the initial adverse benefits determination, but rather reached her decision independently. For better or worse, no doctors were consulted on the appeal, thus no doctor who was involved with the adverse benefit decision was also consulted on appeal. (With the exception that post-appeal Unum voluntarily agreed to review Greenberg's MRI and the reviewing doctor, Dr. Tyler, had previously reviewed the report of Dr. Rubin. However, since Unum could have refused to review the MRI, the fact that it used a doctor who had previously reviewed the file

herself admits that 29 C.F.R. §2560.503's definition of a full
and fair review applies only to claims filed on or after January
1, 2002 and that her claim was filed before this date, she argues
that §2560.503 is merely a codification of pre-existing
requirements for a full and fair review and as such should be
applied to her claim. However, she fails to provide case law
suggesting that any of §2560.503's requirements were mandated by
case law prior to its codification. An independent inquiry by
this Court has produced no such cases.

Rather, pre-§2560.503, district courts in the Second Circuit
had adopted the Third Circuit's requirements for a "full and
fair" review:

> To afford a plan participant whose claim has been
> denied a reasonable opportunity for full and fair
> review, the plan's fiduciary must consider any and all
> pertinent information reasonably available to him. The
> decision must be supported by substantial evidence. The
> fiduciary must notify the participant promptly, in
> writing and in language likely to be understood by
> laymen, that the claim has been denied with the
> specific reasons therefor. The fiduciary must also
> inform the participant of what evidence he relied upon
> and provide him with an opportunity to examine that
> evidence and to submit written comments or rebuttal
> documentary evidence. If the fiduciary allows third
> parties to appear personally, the same privilege must
> be extended to the participant.

*DeVere v. Northrop Grumman Corp.*, 1999 WL 182670, *8 (E.D.N.Y.
1999); *Crocco v. Xerox Corp.*, 956 F.Supp. 129 (D.Conn. 1997);
*Dittmann v. Dyno Nobel, Inc. Defined Ben. Pension Plan I*, 1999 WL

---

should not make Unum's decision arbitrary and capricious.)

727464, *10 (N.D.N.Y. 1999; (all citing *Grossmuller v. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America*, UAW, Local 813  715 F.2d 853, 857 -858 (3rd Cir. 1983)).

Applying these requirements, it is clear that Greenberg received a full and fair review and that as a result, Unum's decision was not "arbitrary and capricious." Shaundra O'Neal was responsible for handling Greenberg's appeal. It is clear that she considered all pertinent evidence because her three page, single spaced letter discusses the reports of Unum's physician's as well as Greenberg's treating physicians. She explains why Unum believes Greenberg's job was sedentary, requiring lifting of no more than 1-2 pounds, and why she accordingly discounted reports from Dr. Khelemsky which stated that Greenberg could not perform a job that required her to lift in excess of 20 pounds. In detailing her consideration of the evidence, O'Neal also satisfied the requirement that she inform Greenberg of the evidence relied on by the administrator. It is undisputed that Greenberg had copies of the evidence.

Furthermore, the decision was supported by substantial evidence. O'Neal had before her two reviews of Greenberg's claim from Dr. Coddington as well as a review by Nurse Bryan and Dr. McDaniel. Nurse Bryan believed that Greenberg should be able to work even with some limitations. Both Dr. Coddington and Dr. McDaniel believed that Greenberg's subjective self-reported

symptoms were unsupported by the objective MRI and EMG tests.
O'Neal also had the independent consultation from Dr. Rubin who
believed that Greenberg was exaggerating her symptoms and that
such symptoms were not supported by the objective medical
evidence. O'Neal further had Dr. Tyler's concurring review of Dr.
Rubin's findings. This is substantial evidence which would
reasonably allow Unum to find that Greenberg was not disabled.

Greenberg argues that Unum should not have discounted the
opinions of her treating physicians who believed that she was
disabled. However, "plan administrators are not obliged to accord
special deference to the opinions of treating physicians."[24]
*Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825
(2003). To the extent "a consultant engaged by a plan may have an
'incentive' to make a finding of 'not disabled,' so a treating
physician, in a close case, may favor a finding of 'disabled.'"
*Id.* Therefore, when faced with a conflict between the opinion of
the treating physician and the opinions of reviewing doctors and

---

[24] This is in contrast to the Social Security context where the opinion
of the treating physician is given great weight. See 20 CFR §404.1527(d)(2)
("Generally, we give more weight to opinions from your treating sources, since
these sources are likely to be the medical professionals most able to provide
a detailed, longitudinal picture of your medical impairment(s) and may bring a
unique perspective to the medical evidence that cannot be obtained from the
objective medical findings alone or from reports of individual examinations,
such as consultative examinations or brief hospitalizations. If we find that a
treating source's opinion on the issue(s) of the nature and severity of your
impairment(s) is well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with the other
substantial evidence in your case record, we will give it controlling
weight.")

independent consultants, it is not arbitrary and capricious for the plan to prefer the reviewing doctors. *Maniatty v. Unumprovident Corp.*, 218 F.Supp. 2d 500, 504 (S.D.N.Y. 2002)(administrator's decisions were not "arbitrary and capricious . . . because they placed more reliance on the analyses of the reviewing physicians than on the conclusions of the physicians who actually examined plaintiff.")

Greenberg also argues that Unum unfairly relied on the "objective" evidence of test results and discounted her "subjective" reports of pain.

An insurance company must be allowed to employ a system which will prevent awarding benefits to those who symptoms are exaggerated or faked.[25] As such, it is reasonable for the company to prefer objective verifiable evidence over the self-reported symptoms of the insured.[26] *Id.* (quoting *Bailey v. Provident Life & Accident Ins. Co.*, 2000 WL 33980014,*4 (N.D.Fla. 2000)(holding that it was reasonable for an insurance company to refuse to pay a claim which was based largely on subjective evidence because

_____

[25] This is in no way meant to suggest that the plaintiff was exaggerating or faking her symptoms.

[26] Though not identical, the Social Security context also requires some objective indicators of disability. See 20 CFR §404.1529(a)("Statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.")

"[a]lthough ... subjective information should be considered, ... reliance on such complaints, without more, would result in insurance companies paying virtually all claims.") *Short v. UNUM Life Ins. Co. of America*, 2003 WL 22937720, *10 (D.Conn. 2003) (citations omitted)("[I]t was not unreasonable for the administrator to conclude that the only material reason the treating physicians were reaching their diagnosis was based on their acceptance of plaintiff's subjective complaints: an acceptance more or less required of treating physicians, but by no means required of the administrator.") An administrator's decisions are not arbitrary and capricious because "they demand objective evidence" and refuse to rely solely on "subjective statements of pain." *Maniatty,* 218 F.Supp. 2d at 504. Thus, had Unum relied solely on the reports of reviewing physicians, its decision would not have been arbitrary and capricious.

However, in this case Unum relied not only the reports of the reviewing physicians, it also relied on the report of Dr. Rubin, an independent consultant who actually examined Greenberg. Greenberg complains, that Dr. Rubin examined her for only five minutes and that he was biased because the instructions to Dr. Rubin from Unum informed him that Greenberg's claim "has been formally appealed and additional medical information has been received. However, the information received has not changed the company's decision to terminate benefits." This instruction may

have been unnecessary. However, taken as only one statement in a
long and detailed letter which asked Dr. Rubin to state his
"positive and negative findings" and to "list any restrictions
and limitations which you feel the insured has" it does not so
taint Dr. Rubin's report so as to make reliance on it, among
other concurring reports, arbitrary and capricious. Furthermore,
to the extent Dr. Rubin's exam was in fact short, the
thoroughness of his report suggests that he was able to obtain
the necessary information from the patient. Unum's reliance,
among other factors, on a thorough report from an independent
consultant cannot be said to be arbitrary and capricious.

Finally, Greenberg argues that she did not receive a "full
and fair review" because the neurologic summary of November 12,
2002 by Dr. Khelemsky and the letter of Dr. Suh submitted with
plaintiff's appeal were reviewed only by Shaundra O'Neal, but not
by a medical professional, prior to denial of the appeal.
However, O'Neal did not need to be a doctor to discount
Khelemsky's neurological report. Dr. Khelemsky explicitly relied
on Greenberg's assertion that her job involved lifting in excess
of 20 pounds and significant bending, stretching, etc. in
determining that she was incapable of work. O'Neal determined
that this was not Greenberg's actual job description. Thus,
O'Neal could reasonably ignore Khelemsky's report as irrelevant,
since it addressed Greenberg's ability to perform activities not

involved in her job.

However, in reviewing all the reports in this case, O'Neal would have been able to ascertain that the new MRI report did not present any substantially different results than the previous MRI. Since reviewing doctors had determined that the earlier MRI did not demonstrate Greenberg's total disability, O'Neal could reasonably assume that this MRI did not demonstrate Greenberg's total disability. In any event, after the commencement of this case, the actual MRI was in fact reviewed by Dr. Tyler. His findings were consistent with the report of Dr. Suh, but did not alter Dr. Tyler's opinion that Greenberg was not disabled. Thus, to the extent Greenberg was entitled to review of the MRI by a physician, and not just O'Neal, she had such a review.

## CONCLUSION

For the reasons set forth above Unum's motion for judgment on the administrative record is granted and Greenberg's motion is denied.

The clerk is directed to transmit a copy of the within to the parties and to the Magistrate Judge and to enter judgment in favor of defendant.

Dated : Brooklyn, New York
       March 27, 2006

           By: /s/ Charles P. Sifton (electronically signed)
               United States District Judge